**UNITED STATES of America,**
**Appellee,**
v.
**Alvin Thomas BLASSINGAME,**
**Appellant.**

**No. 648, Docket 33988.**

United States Court of Appeals,
Second Circuit.

Argued March 27, 1970.

Decided June 1, 1970.

John S. Martin, New York City, for appellant.

Richard Ben-Veniste, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, Paul B. Galvani, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMENFELD, District Judge.[*]

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York after a jury trial on a charge of using an interstate wire to execute a fraudulent scheme in violation of 18 U.S.C. § 1343 (1964).[1]

The evidence against appellant tended to establish that, posing as a recording artist and the brother of Johnny Mathis, a well known entertainer, appellant arranged by interstate wire for a chartered plane to take him and his guests to St. Croix. Appellant was unrelated to Johnny Mathis. He represented himself as Mathis' brother in order to secure credit for the cost of the charter flight for which he was unable to pay.

### I.

Appellant's first contention is that there was insufficient proof that he used an interstate wire or that he knew or had reason to know that interstate wires would be used.

We hold that the evidence amply establishes that an interstate wire was used. Not only could the jury have found that in arranging for his charter flight appellant in New York talked by telephone to one Sizmur, an officer of

Executive Jet, in Columbus, Ohio, but it was also shown that one of appellant's invited guests in appellant's presence called Executive Jet to check on the time the chartered plane would arrive in New York.

However, the government's evidence did not conclusively establish that when appellant talked with Sizmur on the telephone he knew that Sizmur was in another state or that he knew that his guest would have to make an out of state call to get the information about the time of the plane's arrival.[2]

■ The statute does not condition guilt upon knowledge that interstate communication is used. The use of interstate communication is logically no part of the crime itself. It is included in the statute merely as a ground for federal jurisdiction. The essence of the crime is the fraudulent scheme itself. Nothing is added to the guilt of the violator of the statute by reason of his having used an interstate telephone to further his scheme. There is consequently no reason at all why guilt under the statute should hinge upon knowledge that interstate communication is used. If the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied. It is wholly irrelevant to any purpose of the statute that the perpetrator of the fraud knows about the use of interstate communication.

The idea that guilt under the statute depends upon knowledge that interstate communication is used appears to stem from United States v. Houlihan, 332 F.2d 8 (2d Cir.), cert. denied, 379 U.S. 828,

---

[*] Of the District of Connecticut, sitting by designation.

1. "1343. *Fraud by wire, radio or television*

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. However appellant after the flight had taken place again called Sizmur and told him that he would come to Columbus to settle his debt, thus indicating that by this time, at any rate, he knew that he had to call Columbus to get Sizmur.

85 S.Ct. 56, 13 L.Ed.2d 37 (1964). There this court did say:

"The Government was also required to prove that Houlihan caused the mailings, the use of the telegraph and telephone, and the interstate transportation of securities charged in the indictment. It was not necessary, however, to establish that Houlihan directly participated in any of the mailings, use of the wires, or interstate transportation. It was sufficient if they were the foreseeable result of Houlihan's acts. * * *" *Id.* at 13.

The view expressed by the court was, however, unnecessary to the result in the sense that the court held that in that case the use of interstate communication was foreseeable. A true test of the existence of such a rule can arise only in a case like the present case in which it is claimed that the use of interstate communication was not foreseeable and the defendant is acquitted on that ground. We have been cited to no such case and we have found none.

Tending to support a contrary result is our holding in United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L. Ed. 493 (1949), that, in order to find a defendant guilty of receiving goods stolen while being transported in interstate commerce, it is not necessary to show that he knew that the goods were being moved in interstate commerce. See also United States v. Kierschke, 315 F.2d 315 (6th Cir. 1963).

For the reasons set forth above we believe that the view expressed in the *Houlihan* case is erroneous and that there is no requirement under 18 U.S.C. § 1343 that the accused know that instrumentalities of interstate communication are used or foresee that such instrumentalities may be used.

## II.

One of appellant's guests on the trip to St. Croix was permitted, over objection, to testify that appellant had called her on two subsequent occasions to invite her on trips to Acapulco and to England. Appellant contends that it was error to admit this evidence. The appellant's point is without merit. Evidence of other similar acts is admissible where as here it tends to show a pattern of conduct of which the crime charged is a part. See United States v. Deaton, 381 F.2d 114 (2d Cir. 1967); United States v. Robbins, 340 F.2d 684, 688 (2d Cir. 1965).

The judgment of conviction is affirmed.