### UNITED STATES of America

### v.

**Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.**

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

March 31, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

Lawrence Stern, New York City, for defendant Iliana Robinson.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant Iliana Robinson moves to dismiss the indictment, or in the alternative for a severance. Robinson presents four grounds for dismissal of the indictment: (1) prosecutorial vindictiveness and abuse of discretion; (2) abuse of the grand jury; (3) duplicity of Count Nine of the indictment, and (4) insufficiency of the evidence. If none of these grounds warrant dismissal, defendant contends that severance is necessary to ensure a fair trial free of prejudicial spillover. Each of Robinson's claims will be dealt with *seriatim.*

### I. Dismissal of the Indictment

#### A. Prosecutorial bad faith

The defendant vigorously contends that the government engaged in improper harassment in futile attempts to coerce her into testifying before the grand jury. This "harassment" began in April 1982, and continued up until her indictment on November 17, 1982. During this period of time, defendant alleges, agents of the Federal Bureau of Investigation ("FBI") came to Ms. Robinson's apartment on numerous occasions to interrogate her and her mother, maintained surveillance outside her apartment, notified her neighbors of the pending investigation, and used all possible methods to force her to cooperate with the grand jury.

Ms. Robinson was first served with a subpoena for testimony on April 14, 1982. This was withdrawn on April 20. In July, Robinson's attorney, Lawrence Stern, was informed by FBI agents and Assistant United States Attorney ("AUSA") Moritz that information gleaned from "wiretaps and bugs on the acupuncture clinic, and the village apartment, and from the informant, Kamau Bayette, implicated Ms. Robinson in the Brinks robbery and that she could be indicted." November 29, 1982 Affidavit of Lawrence Stern at 4. AUSA Moritz also informed Mr. Stern of the possibility for transactional immunity.

On July 2, Robinson accepted subpoenas for testimony, hair samples, photographs, and fingerprints. Later that same day, her car was searched. After adjournment of the return date of the subpoenas and continued assertions by the government that Robinson could be prosecuted in connection with the Brinks case, the defendant moved to quash the subpoena. On July 19, 1982, the government obtained an order conferring use immunity and requiring Robinson's testimony before the grand jury. Robinson refused to testify. Accordingly, Judge Sofaer held Robinson in civil contempt on September 8, and stayed execution pending appeal. On November 4, the Second Circuit affirmed the judgment of civil contempt and issued the mandate forthwith. Judge Sofaer denied an application for a stay and Ms. Robinson surrendered on November 23rd.[1] A petition for certiorari is currently pending.

■ The defendant alleges that the government's incessant efforts to secure her testimony amounted to prosecutorial vindictiveness. The fact pattern presented by Robinson, however, does not support her claim. The government has never denied that it sought her testimony and used the contempt proceedings as a prosecutorial tool in an attempt to force Robinson into testifying. The government also has never denied that it had sufficient evidence to indict the defendant long before the indictment was returned. The return of the indictment, after the mandate issued from the Second Circuit affirming the adjudication of civil contempt, does not amount to harassment warranting dismissal of the indictment.

■ The decision when and whether or not to prosecute rests entirely in the prosecutor's discretion. *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). The due process clause is violated only when the decision to prosecute is intended to punish a person for exercising one's legal rights. *Id.* at 363, 98 S.Ct. at 667–68; *United States v. Goodwin,*

— U.S. ——, ——, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). In essence, the defendant argues that the indictment returned against her was a penalty for exercising her legal right to challenge the subpoena and its underlying basis. The "opportunity for vindictiveness" suggested by defendant does not constitute a due process violation. *Goodwin,* —— U.S. at ——, 102 S.Ct. at 2494. Instead, there must be a "realistic possibility" that the increased punishment is a result of vindictiveness. *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).

The core of the defendant's argument is that Robinson was legally contesting her civil contempt adjudication at the time of her indictment. The District Court and the Court of Appeals held, however, that Robinson's refusal to testify was baseless. Furthermore, as of July 1982, Robinson was in violation of a court order compelling her testimony.

■ The government offered Ms. Robinson an avenue that would avoid prosecution. Her failure to avail herself of this opportunity and thus subject herself to indictment cannot form the basis of a claim of vindictiveness. This situation is analogous to the plea bargain situation, in which the prosecutor files additional charges against a defendant who refuses to plead guilty to lesser charges. *Goodwin,* —— U.S. at ——, 102 S.Ct. at 2491–92. Robinson's refusal to testify and thus ignore court orders allows the prosecutor then to decide to prosecute based on information it had compiled earlier. The allegations by defendant are thus insufficient to support dismissal of the indictment based on prosecutorial vindictiveness.

### B. Grand Jury Abuse

In a companion opinion, I denied the defendant's motion to dismiss the indictment for grand jury abuse. Robinson, in addition, charges that other government abuses of the grand jury warrant dismissal of the indictment: (1) improper use of grand jury

---

1. Ms. Robinson was released from custody after I vacated the civil contempt judgment and quashed the grand jury subpoenas on December 14, 1982.

subpoenas; (2) interrogation of Samuel Brown; and (3) improper electronic surveillance of conversations with attorneys. This third argument has already been found to be without merit in my Memorandum and Order denying suppression of electronic surveillance at 13–15.

Defendant offers no factual support for her conclusory allegations. The grand jury was not impanelled specifically to investigate the Brinks' robbery nor is there any evidence that subpoenas were used "to aid an FBI fishing expedition." Defendant's Memorandum of Law at 5. Furthermore, the defendant offers no basis for holding that the use of blank subpoenas, filled in when being issued, warrants the extreme remedy of dismissal of the indictment.

■ Robinson further alleges that the interrogation of Samuel Brown without his counsel violated state and constitutional law. First, this ignores the fact that Brown signed waiver of rights' forms at each meeting with the FBI agents and that the defendants were unable to impeach the validity of these waivers. Second, the defendants did not prove that Brown was beaten by the FBI agents or that any statements obtained by Brown were then furnished to the Rockland County prosecutors. *See* my March 28, 1983 Memorandum and Order denying suppression of electronic surveillance at 29; *Massiah v. United States,* 377 U.S. 201, 207, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). Accordingly, this basis for dismissal of the indictment must also fail as being without factual basis. I have serious doubt as to whether Robinson has standing to complain about Brown's statements in any event.

### C. Duplicity

■ Robinson argues that the inclusion of four defendants in Count Nine is duplicitous and thus she requests dismissal of this Count pursuant to Fed.R.Crim.P. 14. Fed. R.Crim.P. 8 requires an indictment to set forth separate counts for each offense. If joinder of offenses or defendants *prejudices* the moving defendant, then the court may order severance or whatever relief justice requires. Fed.R.Crim.P. 14 (emphasis added). Thus, duplicity alone does not warrant relief; the defendant must show resultant prejudice.

Count Nine reads:

From on or about October 20, 1981, up to and including the date of the filing of this Indictment, the defendants WILLIAM JOHNSON, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit"; ILIANA ROBINSON, a/k/a "Naomi"; NILSE COBEO, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa"; and ALAN BERKMAN, together with others known and unknown to the Grand Jury, knowing that the offenses set forth in Counts Six and Seven of this Indictment had been committed, unlawfully, wilfully and knowingly received, relieved, comforted and assisted the offenders in order to hinder and prevent their apprehension, trial and punishment.

(Title 18, United States Code, Section 3).

■ In essence, Robinson argues that this count presents the potential for a general verdict that "conceals a finding of guilty as to one crime and a finding of not guilty as to another" and creates sentencing and double jeopardy problems. *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981). There is no danger of prejudicial duplicity herein. The court charges Robinson with a specific offense and the jury will be asked to determine her individual culpability and return a verdict on her alone. Moreover, two of Robinson's co-defendants in Count Nine are fugitives and will not be tried on April 4, 1983. Accordingly, the minimal danger that the jury will vicariously hold Robinson liable for whatever acts are proven against her co-defendants will be effectively erased during my instructions to the jury.

### D. Insufficient Evidence

■ Robinson's final ground for dismissal of the indictment attacks the sufficiency of the evidence against Robinson before the grand jury. The defendant does not contest the facial validity of the indict-

ment. An indictment validly returned by an unbiased and legally constituted grand jury calls for a trial on the merits. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). This well-established principle remains intact when the indictment is challenged for insufficient evidence. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ." *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). The trial is the appropriate forum for challenging the sufficiency and the competency of the evidence presented against Robinson.

For all the above reasons, Ms. Robinson's motion to dismiss the indictment is denied.

## II. Severance

■ Robinson requests that her trial be severed from the trial of her co-defendants beginning April 4, 1983. The defendant is named only in Count Nine as an accessory after the fact. She alleges that prejudicial "spill-over" from the proof the government intends to offer on the remaining eight counts of the indictment, charges that include, *inter alia,* racketeering activities, bank robbery, armed bank robbery and murder, will preclude her right to a fair trial and thus severance is warranted pursuant to Fed.R.Crim.P. 14.[2]

■ Robinson bears the burden of proving substantial prejudice resulting directly from this multi-defendant trial. *United States v. Rucker,* 586 F.2d 899, 902 (2d Cir.1978). She has not met this burden. Her most powerful argument in support of severance concerns her co-defendant William Johnson, who is charged in both Count Nine and Count One, which charges racketeering activities. In proving Count One, the government is allowed to introduce hearsay statements of alleged co-racketeers against Johnson. Robinson fears that the hearsay testimony admissible against John-

son to prove his membership in the "enterprise" will spill over into the government's proof on Count Nine that Robinson and Johnson "together with others known and unknown" were accessories after the fact. She worries that the jury will be unable to distinguish between the crimes charged against Johnson and his co-racketeers and the crime charged in Count Nine. This boils down to a problem that can be solved by careful jury instructions. Each count charges a separate and distinct offense and the instructions to the jury will make known that guilt is individual on each count and thus reduce potential jury confusion.

Robinson also complains that the activities of the others in Count Nine will be held against her, rendering her vicariously liable for their actions. In making this argument, it must first be noted that both Cobeo and Berkman are presently fugitives and there is almost no likelihood that they will be tried with Robinson in the imminent trial. There obviously will be no spillover from people who are not on trial. The other defendant in Count Nine is William Johnson. The potential problems resulting from co-defendant Johnson were resolved above.

■ Robinson claims that her limited role in the overall indictment further warrants severance. In *United States v. Barton,* 647 F.2d 224 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), the Second Circuit was confronted with a multi-defendant case where all the defendants except one were charged with violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and conspiracy. The lone defendant was charged only with the obstruction of justice and moved for a severance. The court held that the evidence against the movant was "simple and easy for the jury to consider without any spill over effect from the proof adduced against other defendants." *Id.* at 241. Thus, a severance was not warranted. Similarly, a severance is not warranted

2. Robinson also requests a severance pursuant to Fed.R.Crim.P. 8. Joinder of Robinson in the instant indictment, however, is proper because she is charged with participating "in the same act or transactions or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b).

here. The charge against Robinson is straight forward and comprehensible and should not cause jury confusion. Furthermore, Count Nine requires the government to prove Robinson's knowledge of Counts Six and Seven. Clearly these cannot be proven in a sterilized compartment totally divorced from Robinson's own activities.

On balance, the absence of impermissible prejudice that will result to Robinson from a joint trial when combined with the judicial, prosecutorial and juror economy that will be served from a joint trial mandates denial of the defendant's severance motion.

In sum, Robinson's motions for severance and dismissal of the indictment are denied.

SO ORDERED.